Please call the next case. 5-14-0487, Royce McCain, Workers' Compensation Compensation Commission. Counsel, you may proceed. Good morning, Your Honor. Good morning. May it please the Court, Counsel, my name is Richard Salmi and I'm here on behalf of Royce McCain. I'm here in his appeal regarding a work injury of October 29, 2010. The Commission found that Mr. McCain sustained an accident arising out of his employment on October 29, 2010. It found his condition related to his work injury through December 5, 2011, awarded medical treatment and TTD benefits through that date. It denied any further TTD or maintenance benefits for the surgery being recommended by his treating physician, Dr. David Kennedy. I'm here on behalf of Mr. McCain because I believe that the Commission's decision is denying the future treatment and the additional benefits is against the manifesto of evidence. Why should they believe Dr. Kennedy over Dr. Dahl? I believe for several reasons Dr. Dahl's opinion does not merit the weight and credibility that they give him. First, I think he misreads the 2008 surgery records, which he relies on when he says there's no disc material left from that prior surgery that could have been dislodged, as Dr. Kennedy suggests. So I think he misreads that. I think he also ignores the further objective evidence of record. After that operative note, there's an MRI which shows bony material at that level and a subsequent surgery which also showed bony bridging at the back of that disc level. So I think all of those things directly contradict Dr. Dahl's reading when he says that no disc material could have possibly been dislodged to cause these symptoms. Second, I think he ignores the objective evidence of record. In particular, the CT myelogram which provides objective evidence and Dr. Kennedy explains that this is where his symptoms down the right... I believe the CT scan revealed an indentation on the sac or an impingement around the sac at that level. Said it was soft tissue, likely scar tissue rather than a reoccurring disc fragment? That was one of the things he did say, yes. And Dr. Kennedy reviewed that and said that based on his review of those films, those images, that there's definitely something impinging on the nerve root at that level. What about these surveillance tapes and the impact they had? According to the evidence, they have the tape of your claimant shortly after he reported pain of 8.5 on a 10-point scale and said he had an impaired ability to stand or sit for more than a few minutes, several minutes. They show him standing, turning, walking for extended periods of time. He's not holding any devices, not in any discernible pain. I mean, how do you explain that if he's in such a terrible condition? I think two things. One, I would say that what the video surveillance showed did not in any way relate to the restrictions that were found on the functional capacity evaluation or what the restrictions were placed by Dr. Kennedy. In other words, the restrictions that were placed and what the FCE found were that he had limitations on lifting more than 30 pounds, repetitive or frequent crouching, stooping or squatting. The surveillance certainly doesn't show any of that. But didn't he report this tremendous pain and impaired ability to sit or stand for more than a few minutes at a time? He did seem to report high levels of pain. That wasn't corroborated by the surveillance tapes. It was contradicted by the surveillance tapes, wasn't it? I would agree, Your Honor, that when we look at the surveillance tapes, we do not see apparent obvious discomfort. When the physical therapist reviewed the surveillance video, she did point out several things that she found to be consistent. Now, they were more subtle findings and observations, but she found those to be consistent with his overall effort that he had put in on the FCE. Okay, so you've done a good job of explaining that. You've talked about Kennedy and Dowell. But again, your hurdle is to manifest. We have to find an opposite conclusion that's clearly apparent. So a tie in appeal doesn't go to you. I understand, Your Honor, which is why I look to the objective evidence of record. I look to from the very outset of complaints that he was complaining of symptoms down the right leg. This is well documented from early on throughout the course of the record to multiple providers and consistently. Second, to be able to discount that there's something going on causing the symptoms down the right leg, you have to ignore the CT evidence, you have to ignore the FCE findings, and you have to ignore the consistent reports of injury to that part of the body throughout the record. How did your claimant get to Dr. Dowell? Dr. Dowell was a Respondent's Examining Physician, an IME or Section 12 exam. And obviously he doesn't support the claimant's position. That's correct. From very early on, Dr. Dowell said, hey, I don't think there's much going on here. He would have had him at maximum medical improvement six weeks after he saw him without ever even evaluating him. In terms of a bias, you know, let's face it. People commonly argue that the doctor was detained by the other side, so he has a bias, correct? And that's a common argument against the credibility of an expert. Correct. And a hired gun, candidly, of the other side. Correct. And I believe Dr. Dowell testified that he performs the vast majority of all of his evaluations on behalf of Respondents. I think that's fair. Right. But in this case, I mean, he was treating claimants, so that bias would not enter into it, would it? No, Dr. Dowell was not treating Mr. McCain. He only saw him as an evaluating physician. He saw him... But he was referred by another physician that was treated. Dr. Dowell, no. Dr. Dowell was only a Section 12 examiner who saw him on behalf of the... Well, who's Kellenmeier? Kellenmeier is the employer. Okay. So he referred... So, yes, Dr. Dowell was just an examining physician on behalf of... So are you arguing that he was biased? Well, I believe that's true, and I believe Dr. Dowell acknowledges that that's the case. I mean, not that he's biased, of course, but that he sees all of his people on referral from Respondents. Additionally, I think the Commission is wrong to disregard the testimony of Mr. McCain. Right out of the gate, the arbitrator is saying, wait a second, I don't believe that he could possibly have made a recovery from his prior injury. Therefore, because he says he made a good recovery from his prior injury, I don't find him credible. I think that that conclusion, kind of right out of the gate, shows the tenor of where the arbitrator was looking at in terms of Mr. McCain's condition. I don't think there's anything to support what the arbitrator was saying in this regard. He was saying, I don't believe him because he couldn't have possibly gone back to full-duty work. He points back to the restrictions from the prior treatment from Dr. Raskis, but there's nothing in the record to suggest that he had any ongoing problems. He testified that he made a good recovery, that he was doing well, he weaned off of his medications, and he was ready to go back into the workforce, and that's exactly what he did. In early 2010, he went to work as a custodian for Uris Cleaning Services. When Keller-Meyer took over the contract for the Kohl's department store where he was working, they hired him on as their head custodian. He worked full-time. He performed all of his work duties. There's no evidence contrary to his ability to do full-time work. So I think at that point where the arbitrator, right out of the box, so to speak, was already critical of what Mr. McCain was saying, I think that's based on speculation, and because of that, that really belies the commission's credibility determination. I urge that the commission's decision be reversed. Are there any other questions? I don't believe there are. Thank you. Thank you, Counsel. Counsel, you may respond. Patrick Grady on behalf of the employer Keller-Meyer. May it please the Court, Counsel. Before we begin our discussion, I would like to ask the Court to turn to page 16 of Keller-Meyer's brief. There is a sentence there that states, Petitioner specifically testified that he cannot stand longer than 10 or 15 minutes. That sentence is presented without citation, and during my preparation I was unable to find appropriate citation. So I ask that the Court ignore that sentence. That being said, the record contains sufficient evidence to support the commission's decision, and I believe with that in mind the Court should affirm the commission's decision. The central fight in this is, I believe, Dr. Dole's opinion of MMI. He, when he made his opinion, examined several things. He had just examined the petitioner. The petitioner presented complaints of pain and other maladies that did not match what he also examined on the surveillance tape. He also had the benefit of other medical records, where Dr. Gray, for example, noted an inconsistency in the straight-leg braised test. That's to determine radiculopathy. There was an inconsistency between the test while the patient was sitting and while the patient was lying flat. Dr. Schwarzy also noted inconsistencies between his strength testing results and his light-touch sensation results. Dr. Dole also noted that during his examinations, the petitioner claimed numbness and radiating pain, but when he tested the areas where this was radiating, it came from different levels on the spine, which suggests an inconsistency. So just to sum it up, you're suggesting symptom magnification? I believe Dr. Dole suggested that was one explanation for what he was seeing. There was also an absence of objective findings to support his symptoms. And again, of course, he looked at that surveillance tape, where it was clear that the petitioner at least demonstrated on the tape, he did not demonstrate the kind of response to the pain that he was claiming. He walked up 20-some odd stairs, 20 minutes pacing on his balcony, talking on the phone. Again, I believe there's sufficient evidence and the logical inference that the commission made was that Mr. McCain was not suffering the pain that he was representing. So I believe that Dr. Dole's MMI opinion is supportable in the evidence. Well, the issue isn't MMI. The issue is causation. Well, that is correct. It really doesn't have anything to do with causation. I mean, the question here is, did his fall, as Kennedy suggests, dislodge some disc material that had been left behind from the prior surgery? Dole said it didn't. Raskin said there wasn't anything left behind, and the CT scan of December 2010 didn't reveal anything. And so the commission decided to go along with Dole's opinion, and it said that the lesser filling of the L5 nerve for the sheath was not caused by any accident on October 29, 2010. No residual disc material dislodged as a result of the accident. It's a causation issue. It's not MMI. Ultimately, the opinion of the radiologist who performed those tests, who suggested that there was a lesser filling of the L5 nerve, his opinion, if you then follow Dr. Dole's later opinions, is irrelevant. Because Dr. Kennedy said, I think petitioner injured his S1 nerve. Well, the S1 nerve was not tested in the diagnostic studies that they then point to. So, in other words, you have a radiology study that says there's lesser filling at L5. The radiologist says that could be from the prior surgery. That could be disc pathology at L4, L5. Don't know. Dr. Kennedy says petitioner's pain is from injuries to his S1 nerve. So, while they point to the study, the study doesn't support Dr. Kennedy's opinion either. And Dr. Kennedy expressed his opinion without reexamining petitioner. His recommendation for surgery was never in his medical notes. Never in the correspondence sent to petitioner's counsel. Never discussed with the petitioner. Raised only during his deposition for the first time. So, I think it's not just Dr. Dole's opinion that is supported by the other physicians who did diagnostic studies and there were no loose bodies found. By Dr. Raskis's surgical notes from his original injury that suggest that the disc material was removed at that area. It's the lack of credibility in Dr. Kennedy's presentation of his opinion. I don't even think you have to make that argument. The argument is the commission chose to believe Dole over Kennedy. They make the credibility finding. We don't have to believe that there was insufficiencies in Kennedy's opinion. I think the argument is clear. I understand your argument. But in terms of the appeal, you don't even have to go that far. I believe my argument suggests there's sufficient evidence. And with that, I will beg my leave. And thank you very much for your attention. Thank you, counsel. Counsel, you may reply. I did not have any reply. Okay, very well. Thank you both, counsel, for your arguments in this matter. We take them under advisement. This position shall issue.